IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUDITH GARCIA, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. TJS-23-3188 |
| FRANK KENDALL, III | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

The plaintiff worked for a government agency for over 15 years. When she was about five years from retirement, the agency terminated her. After the agency rejected the plaintiff's challenges to the decision, she filed this lawsuit. Although the arbitrary and capricious standard of review is highly deferential, an agency must still demonstrate that it considered the evidence before it. Because the agency's explanation ran counter to the evidence before it and its decision is in contravention to the legal authority upon which it relied, the decision cannot stand. The case will be remanded to the agency for further consideration.

Pending before the Court are the Motion for Summary Judgment (ECF No. 21) filed by Plaintiff Judith Garcia and the Cross-Motion for Summary Judgment (ECF No. 25) filed by Defendant Frank Kendall, III, Secretary of the United States Air Force (the "Secretary").[1] Having considered the submissions of the parties (ECF Nos. 21, 25, 26, and 28), I find that a hearing is

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 17.

unnecessary. *See* Loc. R. 105.6. For the following reasons, Plaintiff's Motion will be **GRANTED** and Defendant's Cross-Motion will be **DENIED**.

**I.      Introduction**

Ms. Garcia brought this action under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, to challenge the decision of the Air Force Board of Correction of Military Records ("Board"). ECF No. 1. She alleges that the action by the Secretary to discharge her from active duty when she was less than five years from retirement eligibility violated Department of Defense Instruction 1320.08 ("DoDI 1320.08") and that the Board's decision not to correct her record was therefore arbitrary, capricious, and contrary to law. Ms. Garcia contends that the Court of Appeals for the Federal Circuit's ruling in *Baude v. United States*, 955 F.3d 1290 (Fed. Cir. 2020), interpreting DoDI 1320.08 is applicable to her case, and that the Board's decision is inconsistent with that ruling.

The Secretary argues that his non-continuation of Ms. Garcia was permissible under the "authority and discretion in continuation of officers" with which he is afforded "in order to meet the needs of the Air Force." ECF No. 25-1 at 3-5 (citing 10 U.S.C. §§ 611(a) & 637(a)(1) and DoDI 1320.08). He also contends that the Federal Circuit's ruling in *Baude* is not binding on this Court and that this Court "need not . . . adhere to the principles and holding articulated in that decision." ECF No. 25-1 at 16. For these reasons, the Secretary argues that the Board's decision must stand.

**II.     Discussion**

    **A.  Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "When faced with cross motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations and citations omitted).

"Because claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record, such claims are properly decided on summary judgment. *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007)*; see also Deese v. Esper*, 483 F. Supp. 3d 290, 303–04 (D. Md. 2020).

3

B.   Background[2]

1.   **Statutory and Regulatory Framework**

a.   **"Up or Out" Policy**

Under the Defense Officer Personnel Management Act, 10 U.S.C § 611 *et seq.*, the U.S. Army, Air Force, Marine Corps, and Space Force follow an "up or out" system. In this system, officers who hold the grade of captain or major and are deferred for promotion twice in a row must ordinarily be discharged. 10 U.S.C. § 632. But this rule has exceptions. One such exception is 10 U.S.C. § 632, which permits an officer to be continued on active duty "subject to the needs of the service" if she is selected by a continuation board. This case concerns the decision of the Secretary not to continue a servicemember, after the servicemember was selected by a continuation board for continuation on active duty pursuant to 10 U.S.C. § 632.

b.   **DoDI 1320.08**

The Secretary of Defense, who is tasked with implementing the statutes cited above, promulgated DoDI 1320.08. *See* 10 U.S.C. § 637(e) ("The Secretary of Defense shall prescribe regulations for the administration of this section."). The version of DoDI 1320.08 effective at all relevant times states:

> The Secretary of the Military Department concerned may, when the needs of the respective Military Service require, convene continuation selection boards according to section 611(b) of Reference (d) to recommend commissioned officers in the grade of O-4 on the Active Duty List who are subject to discharge or retirement according to section 632 of Reference (d) for continuation on the Active Duty List according to section 637 of Reference (d). A commissioned officer on the Active Duty List in the grade of O-4 who is subject to discharge according to section 632 of Reference (d) shall normally be selected for continuation if the officer will qualify for retirement according to section 3911, 6323, or 8911 of Reference (d) within 6 years of the date of continuation. The Secretary of the Military Department concerned may, in unusual circumstances such as when an officer's official personnel record contains derogatory information, discharge an

---

[2] Unless otherwise noted, the following facts are not in dispute.

4

officer involuntarily in accordance with section 632 of Reference (d). When the Secretary of the Military Department concerned intends not to continue larger pools of officers in the grade of O-4 who would qualify for retirement within 6 years of the date of a continuation, the Secretary shall notify the USD(P&R) of the proposed course of action.

DoDI 1320.08, para. 6.3, Continuation of Officers Serving in the Grade of O-4.

### c. Military Correction Boards

Military Correction Boards are established under 10 U.S.C. § 1552. Under that section, the Secretary of each military department may establish "boards of civilians of the executive part of that military department" to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." *Id.* § 1552(a)(1). "Corrections under [10 U.S.C. § 1552] shall be made under procedures established by the Secretary concerned" and approved by the Secretary of Defense. *Id.* § 1552(a)(3)(A).

Procedures governing the Board are set forth in 32 C.F.R. § 865 *et seq*. The Board has a responsibility to, in appropriate cases, "direct[] correction of military records to remove an error or injustice, or recommend[] such correction." *Id*. § 865.2. The burden is on the applicant to provide "sufficient evidence of material error or injustice." *Id.* § 865.4. However, the Board may "get additional information and advisory opinions on an application from any Air Force organization or official," "ask the applicant to furnish additional information regarding matters before the Board," and reconsider its decisions when an applicant presents "newly discovered relevant evidence that was not reasonably available when the application was previously considered." *Id.* §§ 865.4(1)-2 & 865.6(a).

### 2. Factual Background

#### a. The Secretary's Memorandum to the USD(P&R)

In a memorandum dated December 6, 2010, the Secretary of the Air Force informed the Under Secretary of Defense for Personnel and Readiness ("USD(P&R)") of his intention to exercise his purported authority to not selectively continue officers in Ms. Garcia's position. AR 45.[3] The memorandum stated in its entirety:

> In our continuing efforts to manage our officer corps and bring us within Congressionally mandated end-strength, I intend to exercise my authority contained in DoDI 1320.08, para 6.3, to not selectively continue large pools of twice-deferred officers in the grades of O-3 and O-4 who would otherwise qualify for retirement within 6 years of the date of a continuation. Exceptions to this decision will be some Chaplains (i.e., Catholic Priests), some rated (i.e., Remotely Piloted Aircraft Operators), and some Nurse Corps (i.e., Flight and Operating Room Nurses).

*Id.*

#### b. Ms. Garcia's Discharge and Initial Petition to the Board

On March 9, 2011, Ms. Garcia was not selected for promotion to the rank of Lieutenant Colonel for the second time. AR 31. A continuation board convened to consider Ms. Garcia for continuation until she became eligible for retirement in May 2016. AR 50. The continuation board recommended Ms. Garcia's selection for continuation. *Id.* However, the Secretary disapproved the selection and discharged Ms. Garcia from active duty. *Id.* The Secretary cited the need to meet Congressionally-mandated end strength as the reason for Ms. Garcia's discharge. AR 82. Ms. Garcia was involuntarily discharged on August 31, 2011, and credited with 15 years, 4 months, and 22 days of active duty. AR 7.

---

[3] All references to the administrative record will be made to "AR." The administrative record is filed at ECF No. 24.

Ms. Garcia first sought review of her discharge before the Board on April 8, 2014, on the grounds that the Secretary's decision was unlawful and unjust. AR 25. She alleged that her discharge by the Secretary over the continuation board's recommendation was contrary to the governing law, including DoDI 1320.08 and guidance the Secretary had issued to the continuation board. AR 26. She requested that her date of separation be changed to allow retirement under the Temporary Early Retirement Authority ("TERA"), or that she be reinstated to active duty under selective continuation. The Board denied her request on December 8, 2015. AR 22. *Id.* It determined that the TERA program was not in effect at the time of Ms. Garcia's discharge, so she was not eligible for early retirement under that program. *Id.* The Board also found that "there is no requirement to continue a member selected by a board if the needs of the service do not warrant or support the continuation." *Id.* (noting that continuation is "subject to the needs of the service," per 10 U.S.C. § 637(a)(1)).

### c. *Baude v. United States*

In the years following Ms. Garcia's discharge, several other officers who were not selected for continuation just a few weeks before Ms. Garcia's discharge filed suit in the United States Court of Federal Claims. *See Baude v. United States*, 137 Fed. Cl. 441 (2018), *rev'd in part, vacated in part*, 955 F.3d 1290 (Fed. Cir. 2020). That case was ultimately appealed to the United States Court of Appeals of the Federal Circuit, and in 2020, the Court of Appeals issued its ruling, which interpreted DoDI 1320.08. 955 F.3d 1290. Ms. Garcia and the Secretary rely on *Baude* extensively in their arguments in the present case.

The facts of *Baude* are as follows. After the Secretary of the Air Force notified the USD(P&R) that he intended to suspend continuation for O-3 and O-4 officers within six years

from retirement,[4] he issued a memorandum of instructions to a continuation board consistent with this new policy. *Id.* at 1294. The new instructions stated,

> Majors who will qualify for retirement within five years of the convening date of the board shall normally be continued. Officers not within five years of retirement may be recommended for continuation, but only if you determine that continuation is clearly in the best interest of the Air Force. *Id.*

Following these instructions, the continuation board rejected continuation requests from 157 officers. *Id*. at 1295. Thereafter, Lieutenant Colonel Engle and fifteen other majors petitioned the Board "to convene a special board that would (1) reconsider the non-continuation decisions and reinstate them into active duty or (2) grant them retirement benefits under the Temporary Early Retirement Authority Program." *Id.* at 1296. The Board denied the request and Engle filed suit in the Court of Federal Claims. Engle's claim was consolidated with claims by other similarly situated plaintiffs. *Id.* The consolidated claims were remanded to the Board on the grounds that the Board's denial was not explicit. *Id.* On remand, the discharged officers' requests to convene a special board were once again denied, and they again appealed the decision in the Court of Federal Claims. *Id.*

On cross-motions for summary judgment, the Court of Federal Claims held in favor of the Board. 955 F.3d at 1296. The court determined that use of the phrase "shall normally" in DoDI 1320.08 establishes a norm rather than a mandate, and that the Secretary of the Air Force has the authority to deviate from that norm in "unusual circumstances." *Id.* at 1297. The court found that "the language requiring the [Secretary of the Air Force] to notify USD(P&R) of his intent not to continue 'larger pools' of officers implies that there could be some other [non-personal] categorical basis for denying the continuation." *Id.* The Court of Federal Claims also held that the need to

---

[4] The notification that the Secretary of the Air Force provided to the USD(P&R) that was relevant to the facts of *Baude* is the same memorandum, dated December 06, 2010, cited by the Board in the present case. *See* AR 2 & 45.

"reduce manpower while also maintaining an appropriate mix of airmen" was an "unusual circumstance" sufficient to permit the Secretary of the Air Force to deviate from that norm. *Id.* Engle appealed the Claims Court decision. *Id.* at 1298.

The Federal Circuit reversed the Court of Federal Claims, holding that "the Secretary of the Air Force does not have the discretion to rewrite DoDI 1320.08." *Id.* at 1292. The court found that "[t]he regulation's use of 'shall normally' is not an invitation for department secretaries to decide who deserves to be *presumptively continued*. It is an instruction that an officer shall normally be continued absent unusual circumstances . . . ." *Id.* at 1299 (emphasis in original). Yet the Secretary's memorandum of instructions modified the regulation by reversing the presumption and "decreased the protective threshold for O-4 officers both by increasing the required number of years of active service, and by modifying how that number was to be calculated." *Id.*

The Federal Circuit further held that the language in DoDI 1320.08 permitting a department secretary to "discharge an officer" in "unusual circumstances" does not "justify doing away with the presumption of continuation." *Id.* at 1301. Since the only enumerated "unusual circumstance" in the regulation is "when an officer's official personnel record contains derogatory information," any other "unusual circumstance" that would justify overcoming the presumption of continuation must also "relate to the individual officer's circumstances." *Id*. (applying the principle of *noscitur a sociis*) (internal citations and quotations omitted). The Air Force's need to maintain an appropriate mix of airmen or reduce end-strength, therefore, "cannot constitute 'unusual circumstances' under the governing regulation.'" *Id*. at 1303.

Finally, the court held that the provision of DoDI 1320.08 requiring that a Secretary of a Military Department notify the USD(P&R) before non-continuing "larger pools" of officers within

six years from retirement does not contravene the earlier provisions of DoDI 1320.08 para 6.3. Rather, the court held,

> The language governing non-continuance of "larger pools of officers" stipulates an additional requirement. It is reasonable to assume that, if a department secretary determines that a large pool of O-4 officers should not be continued—even though they should normally be continued—the USD(P&R) would want to be apprised of this abnormality… The "notification" requirement, however, does not allow the Secretary to depart sub silentio from the prior rules that apply to each individual officer. The government's interpretation of the regulation is thus at odds with one of the most basic interpretive canons: that a statute or regulation "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.

*Baude*, 955 F.3d at 1304-05 (internal citations omitted).

The Federal Circuit therefore found that the Board's decision to deny Engle's petition was arbitrary, contrary to law, and unsupported by substantial evidence. The Court vacated the Court of Claims ruling and remanded to the Board "with instructions to convene a special board for reconsideration of Engle's non-continuation through a process consistent with the plain meaning of DoDI 1320.08." *Id*. at 1306.

        **d.**     **Ms. Garcia's Renewed Petitions**

           **i.**     **Ms. Garcia's April 2021 Petition**

Following the Federal Circuit's decision in *Baude*, Ms. Garcia filed a second challenge to the Board's decision on April 7, 2021. She requested that the Board reconsider its decision because the Secretary's action violated DoDI 1320.08 as it had been interpreted by *Baude* and was therefore contrary to law. AR 13-14. Ms. Garcia conceded that the Secretary's path to affect non-continuation was not identical in her case as in *Baude*. AR 14. But she argued that in both instances the Secretary "violated DoDI 1320.08 by discharging majors who normally would have been continued." *Id.* She pointed out that the Secretary's justification for the non-continuation was

identical in both cases (i.e., "to reduce the force"), and that the court in *Baude* had already concluded that reduction in force was not an "unusual circumstance" under DoDI 1320.08. *Id.*

The Board denied Ms. Garcia's second request on April 21, 2022. AR 7. In its Record of Proceedings, the Board cited *Baude* as "Applicable Authority/Guidance." AR 8-9. The Board also cited 10 U.S.C. § 637(a)(3); DoDI 1320.08, para. 3.3(a) (effective July 7, 2017, change 2 effective August 28, 2020); and two Air Force Instructions regarding officer promotions and selective continuation. *Id.* In addition to these legal authorities, the Board considered Ms. Garcia's application and supporting evidence, excerpts from official records, a record of the proceedings associated with Ms. Garcia's 2014 petition, two advisory opinions from Air Force Personnel Center ("AFPC") employees, and Ms. Garcia's responses to those advisory opinions. AR. 11-12.

The first advisory opinion recommended that Ms. Garcia should be denied retirement because she did not complete 20 years of active service and TERA was not in effect at the time that Ms. Garcia was discharged. AR 148. This advisory opinion did not address the grounds actually invoked by the Ms. Garcia in her request, i.e., DoDI 1320.08 or *Baude*. The second advisory opinion also recommended denying Ms. Garcia's request for retirement. This opinion noted that 10 U.S.C. § 637(a)(1) explicitly makes a continuation "subject to the approval of the Secretary of the military department concerned" and subject to the "needs of the service." AR 150-151. It also counseled that *Baude* was not controlling in Ms. Garcia's case because (1) Ms. Garcia's continuation board did not receive the same instructions from the Secretary that the *Baude* court found problematic and (2) the court had not ordered the Board to take any action with respect to Ms. Garcia ("With Mr. Engle, [the plaintiff in *Baude*,] the [Board] had no choice but to convene a board for reconsideration of his non-continuation. With [Ms. Garcia], the [Board] has a choice."). AR 151.

11

The Board concurred with the AFPC Advisory Opinions. AR 11. First, the Board held that Ms. Garcia was not similarly situated to the plaintiff in *Baude* because the continuation boards for the plaintiff in *Baude* and Ms. Garcia were not identical, and because the continuation board for Ms. Garcia did not receive the Memorandum of Instruction from the Secretary that the Federal Circuit held violated DoDI 1320.08. *Id.* Second, the Board found that Ms. Garcia had "not provided any evidence to substantiate [that] it was not within the [Secretary's] authority to disapprove the recommendations of the continuation board." *Id.*

### ii.   Ms. Garcia's November 2022 Petition

On November 28, 2022, Ms. Garcia asked the Board to reconsider its decision a third time. AR 2. Ms. Garcia pointed out that the Board had cited the incorrect regulation in its April 21, 2022 decision. AR 167. In the April 2022 decision, the Board identified a version of DoDI 1320.08 that became effective several years after Ms. Garcia's discharge. AR 9. The version cited by the Board differs from the one that was in effect at the time of Ms. Garcia's discharge in several ways, including the addition of the language "there is no entitlement to continuation." *Id.; see* DoDI 1320.08. Ms. Garcia also argued in her renewed petition that the Court of Appeals for the Federal Circuit considers *Baude* to be a precedential case regarding the interpretation of DoDI 1320.08, and not merely binding on the narrow facts before it. AR 169. Ms. Garcia argued that, under the Federal Circuit's interpretation of DoDI 1320.08, (1) the Secretary is prohibited from non-continuing officers who are within six years of retirement, absent "unusual circumstances;" (2) the need to meet Congressionally-mandated end strength is not an "unusual circumstance" to justify non-continuance under DoDI 1320.08; and (3) the Secretary may not circumvent the "unusual circumstances" requirement by notifying the USD(P&R) of his intent to non-continue large pools of majors (that is, the notification requirement is *in addition* to the other requirements of DoDI

1320.08 when large pools of officers are involved, rather than an alternative to the other requirements). AR 169-172. Ms. Garcia further argued,

> DODI 1320.08 provides no specific rules concerning the instructions to be provided to a continuation board. The [Court of Appeals] decided that the [Memorandum of Instruction] to the CY11A Selective Continuation Board violated DODI 13020.08 because of its interpretation of the rules that *are* in 1320.08. Accordingly, the fact the that SecAF did not modify the protective window in the MOI to my continuation board is not a relevant fact for determining how DODI 1320.08 should be interpreted and does not provide a reason for determining that DODI 1320.08 should be interpreted any differently in my case than the [Court of Appeals] interpreted it in *Baude v. United States*.

AR 173.

In its April 2022 decision, the Board held that the Secretary had the statutory authority to disapprove the continuation board's recommendation. Ms. Garcia responded in her November 2022 petition by pointing out that statutory authority can be cabined by regulation. AR 176 (citing, *e.g.*, *Fisher v. United States*, 403 F.3d 1167, 1177 (Fed. Cir. 2005); *Sargisson v. United States*, 913 F.2d 918 (Fed. Cir. 1990); *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959) for the proposition that regulations can place limits on a department's statutory authority). She argued that DoDI 1320.08 similarly limited the Secretary's authority to non-continue officers.

The Board issued its decision on April 20, 2023. AR 2. In reaching its decision, the Board again confirmed its reliance on *Baude*, as well as other legal authorities (10 U.S.C. § 637(c); 10 U.S.C. § 637(a)(1); and DoDI 1320.08 dated March 14, 2007, para. 6.3), the evidence Ms. Garcia submitted in support of her petition, and the record of proceedings from Ms. Garcia's earlier petitions. AR 4-6.

The Board once again denied Ms. Garcia's petition. AR 5. The Board first stated that Ms. Garcia was not "similarly situated" to the plaintiff in *Baude* because she was not considered for continuation by the same continuation board that received the erroneous instruction at issue in *Baude*. *Id.* Next, the Board found that the Secretary had "authority to disapprove the

13

recommendations" of Ms. Garcia's continuation board under 10 U.S.C. § 637(c). *Id.* Finally, the Board held that the Secretary's memorandum notifying the USD(P&R) of his intent to not selectively continue applicants like Ms. Garcia was not "illegal." *Id.* at 5-6. Instead, according to the Board, the Secretary's memorandum was a "procedural requirement imposed by DoDI 1320.08."

      **C.**     **Ms. Garcia's APA Claim**

            **1.**     **Arbitrary and Capricious Standard of Review**

Under the APA, 5 U.S.C. § 702(2)(A), a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Appalachian Voices v. U.S. Dep't of Int'r*, 25 F.4th 259 (4th Cir. 2022) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). When reviewing an agency decision, federal courts must "review an agency's decision solely by the grounds invoked by the agency." *Jiminez-Rodriguez v. Garland* 996 F.3d 190, 194 (4th Cir. 2021) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)) (internal quotations omitted). To that end, judicial review of an agency's decision is generally restricted to the administrative record. *See, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007).

"Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir.

2009). However, "[t]he 'arbitrary and capricious' standard is not meant to reduce judicial review to a rubber stamp of agency action. While the standard of review is narrow, the court must nonetheless engage in a searching and careful inquiry of the record." *Id*. at 192 (internal citations and quotations omitted). The court "must consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 87 (1971). Where there is a "rational connection between the facts found and the choice made," the agency is entitled to deference and the court may not substitute its own judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Auto Ins. Co.*, 463 U.S. at 43.

### 2. The *Baude* Interpretation of DoDI 1320.08 Controls

Both parties' briefs extensively address *Baude*'s applicability to the present case. Ms. Garcia argues that *Baude*'s interpretation of DoDI 1320.08 is binding because the Board relied on *Baude* in its determination. ECF No. 26 at 3. Defendant argues that *Baude*'s interpretation is not binding and that the Court "should not consider it as persuasive authority and should decline to apply its principles." ECF No. 25-1 at 15-16. This Court must begin with the weight owed to *Baude*.

In isolation, *Baude* would not be binding on this Court because it was issued by the Federal Circuit and this Court sits in the Fourth Circuit. *See Baude* 955 F.3d 1290; *see also World Fuel Servs Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 523 (4th Cir. 2015) ("The out-of-circuit case . . . is not binding on us"). That said, the Fourth Circuit has not addressed the question of whether it is within the authority of the Secretary under DoDI 1320.08 to selectively non-continue O-4 officers who are within 6 years of retirement in order to meet end strength needs of the military. The Court of Federal Claims and the Court of Appeals for the Federal Circuit, by

contrast, "have extensive experience reviewing decisions of corrections boards in military pay cases." *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) (internal quotations and citations omitted). The *Baude* decision is therefore a persuasive authority, which this Court will give substantial weight.

But more importantly, the Board itself recognized *Baude*'s authority and purported to apply it when making its determination. In doing so, the Board was required to properly apply *Baude*'s interpretation of DoDI 1320.08 to the issues before it. As discussed above, under the arbitrary and capricious standard of review, a court's review of an agency's decision is restricted to the administrative record, and the agency that made the decision under review is restricted to the grounds contained therein. *See Jimenez-Rodriguez*, 996 F.3d at 194; *Chenery Corp.*, 318 U.S. at 87-90; *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684 (4th Cir. 2019) ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Auto Ins. Co.*, 463 U.S. at 50)).

The Board cited *Baude* as an applicable authority in its determination regarding Ms. Garcia's request to correct her record and relied extensively on that holding in making its determination of whether the Secretary acted lawfully. When it treated *Baude* as binding, the Board made no suggestion that the Federal Circuit had misinterpreted the regulation. And the Board made no qualification that its reliance on *Baude* was only partial. This Court will therefore defer to the interpretation of DoDI 1320.08 set forth by the Federal Circuit in *Baude* insofar as there is any ambiguity in the regulation.

### 3. The Board's Decision Was Arbitrary and Capricious

In the Findings and Conclusion section of the Record of Proceedings associated with Ms. Garcia's November 2022 petition, the Board stated, "[w]hile the applicant contends the [Secretary]

[like in *Baude*] violated DODI 1320.08 when he disapproved the recommendations of the CY10C BSC Major Continuation Board that she be continued, the applicant has provided *no evidence to sustain this to be the case*." AR 5 (emphasis added). The Board also stated that there is "no evidence the [6 Dec 2010 Memorandum] was illegal." However, each of these statements runs counter to the evidence before the agency at the time of its decision. Ms. Garcia provided the *Baude* opinion as an attachment to her petition, and she included detailed analysis and supportive caselaw demonstrating that the *Baude* court's interpretation of DoDI 1320.08 prohibited non-continuation by the Board either through a continuation board (as was in the case in *Baude*) or by the Secretary acting on his own (as in Ms. Garcia's case). She also identified excerpts in *Baude* where the court noted that the 6 Dec 2010 Memorandum was insufficient to satisfy the requirements of DoDI 1320.08. AR 169-172.

The Board failed to consider the authorities cited by Ms. Garcia, apply its expertise, and find her arguments unconvincing. It instead ignored the evidence altogether and asserted that the evidence did not exist, even though the evidence was plainly present in the record. The Board's explanation that there was "no evidence" that (1) the Secretary violated DoDI 1320.08 when he disapproved the recommendation that Ms. Garcia be continued and (2) the 6 Dec 2010 Memorandum was illegal and therefore ran counter to the evidence before it. This representation is simply untrue and belied by the record evidence.

Furthermore, Ms. Garcia's analysis is an accurate description of the Federal Circuit's holding. *See Baude*, 955 F.3d 1290; *see also* Discussion of *Baude*, *supra*. It is also supported by the plain language of DoDI 1302.08, which states, "[a] commissioned officer on the Active Duty List in the grade of O-4 who is subject to discharge according to section 632 of Reference (d) shall normally be selected for continuation if the officer will qualify for retirement . . . within 6 years of

17

the date of continuation." This regulation says that an officer shall be *continued*, not that an officer shall be *recommended* for continuation. DoDI 1320.08 also explicitly places a limit on the Secretary's authority to non-continue officers, not merely a limit on the instructions the Secretary may provide to a continuation board: "The *Secretary* of the Military Department concerned may, *in unusual circumstances*, such as when an officer's official personnel record contains derogatory information, discharge an officer involuntarily in accordance with section 632 of Reference (d)." *Id.* (emphasis added). The only unusual circumstances that the Secretary identified as grounds for non-continuing Ms. Garcia was a need to reduce end-strength. AR 82. As noted earlier, the Federal Circuit rejected reduction of end-strength as an "unusual circumstance" for the purposes of DoDI 1320.08. *Baude*, 955 F.3d 1304. Although the Secretary acted through a continuation board rather than independently in *Baude*, the plain text of the regulation and the reasoning of the court in *Baude* apply to the actions of the Secretary; it is not confined, as the Board suggests, to recommendations of the continuation boards.

Finally, the Board cited 10 U.S.C. § 637(c) for the proposition that "continuation of an officer on active duty . . . pursuant to the action of a selection board . . . is subject to the approval of the Secretary of the Military Department concerned." It is true that this statute gives the Secretary discretion to reject a continuation board's recommendation to continue an officer, but that discretion has been cabined by regulation. The Department of Defense has been delegated authority to promulgate all regulations implementing 10 U.S.C. 611 *et seq.*, and DoDI 1320.08 is one such regulation. 10 U.S.C. § 637(e) ("The Secretary of Defense shall prescribe regulations for the administration of this section."). "[G]overnment officials must follow their own regulations, even if they were not compelled to have them at all." *Voge v. United States*, 844 F.2d 776 779 (Fed. Cir. 1988) (citing *Service v. Dulles*, 354 U.S. 363 (1957)). As a component of the Department

of Defense, the Secretary was bound by DoDI 1320.08, even though greater discretion was authorized by Congress.

Even with all due deference to the Board's decision under the arbitrary and capricious standard of review, and with respect for the Secretary and the Air Force's authority in matters regarding personnel decisions and continuation of its members, this Court must conclude that the Board's decision was arbitrary, capricious, and contrary to law.

The Court finds that there is no genuine dispute as to any material fact, as this claim is brought under the APA and must be adjudicated on the basis of the existing adjudicative record. Accordingly, Ms. Garcia is entitled to judgment as a matter of law. Plaintiff's Motion for Summary Judgment (ECF No. 21) is **GRANTED** and Defendant's Cross-Motion for Summary Judgment (ECF No. 25) is **DENIED**.

### III.    Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF No. 21) is **GRANTED** and Defendant's Cross-Motion for Summary Judgment (ECF No. 25) is **DENIED**. The Board's denial of Ms. Garcia's November 2022 Petition, Docket Number BC-2014-01548, will be vacated and her petition will be remanded to the Board for further proceedings consistent with this opinion. A separate Order follows.

December 12, 2024  
Date

/s/  
Timothy J. Sullivan  
United States Magistrate Judge